## Lewis W. Horn v. The People.

*Wharves: Highways: Title: Public easement.* The wharves in the city of Detroit, whether terminating highways or not, are not highways, but are private property, and where they are owned by the city, may be leased like other corporate property to private lessees. The title is proprietary, and not a public easement.

HORN *v.* PEOPLE.

*Ordinances : Private property : Wharves.* It is not competent for the city to pass ordinances to preserve private property, from encroachment, in the case of wharves, any more than in the case of other property; that protection must be enforced under the laws of the land, and not by municipal ordinances.

*Harbor master : Vessels : Rights of navigation.* The harbor master of Detroit can only be authorized to interfere with vessels when they violate the rights of navigation; and his action must be justified under existing facts.

*Legislation : Discretion of officer : Regulations : Trespass.* It is not competent by legislation or ordinance, to make the rights and duties of navigators depend on the will or discretion of any officer. They can only be required to obey such *regulations as are equally binding by law on all persons alike.* And an officer who interferes with those who are not, in fact, violating the law, acts at his peril, and is a trespasser.

*Complaint : Harbor master : Disobedience of orders.* A complaint is not valid which merely shows that a party has refused to obey the orders of a harbor master; it must show such conduct as is a violation of the rights of navigation, and aver such facts as would justify the orders and render disobedience wrongful.

*City by-laws : Costs.* In this case, costs were awarded against the city, which was held to be the real party in interest on whose behalf the prosecution was brought.

*Heard October 26. Decided November 23.*

*Certiorari* to the Recorder's Court of Detroit.

*Moore & Griffin,* for plaintiff in *certiorari.*

*F. G. Russell* and *D. C. Holbrook,* for the People.

CAMPBELL, J.

Horn was convicted in the recorder's court of Detroit, of violating the city ordinances by refusing to obey the directions of the harbor master, to remove his steamboat from the dock at the foot of Woodward avenue, leased by the city to Geo. H. Brady and others.

One objection raised is, that he had a right to keep his vessel there because it was a public and not a private place, and a highway. This idea is based on the assumption that a highway leading to a navigable stream, must necessarily continue over all wharves and other erections that may be placed beyond the terminus at the shore in its natural state. As the vehicles used on land and water cannot be used on both, it is not very easy to see the force of this suggestion.

Wharves are absolutely necessary for all ordinary navigation, and their necessary uses would generally be incompatible with the purposes of a land highway, and might be nuisances to any such way. But however this may be, all land highways are such solely by municipal law, which may establish, regulate, and destroy them at all times. All public easements are subject to extinguishment, or control, by legislative authority. If there are private rights also, they cannot require ways to be perpetuated as public, whether left open for private purposes or not. There can be no highway which is not made so by common or statute law, or which is not under public custody; and, unless coming within some constitutional protection, there is none that can exist where the law has provided that it shall not exist.—*People v. Supervisors of Ingham, 20 Mich., 95; People v. Jones, 6 Mich., 176.*

At the earliest city organization of Detroit, in 1815, the city was authorized to erect, repair and regulate public wharves.—*L. 1820, p. 175.* The charter of 1827 continued in the new corporation, the ferries, wharves and landing places of the old one, with power to regulate the building of wharves and docks by private persons, and in some cases to require filling up and embankments, and to do the work, and sell the grounds and wharves, of the defaulters not paying the assessments.—*L. 1827, p. 573, §§ 11, 27, 42.* In 1824, to carry out certain desired improvements for the city in its neighborhood, a wharf was authorized to be built by a private person, in continuation of Randolph street, with the usual privileges of private owners, subject to some special conditions.—*L. 1827, p. 594.* This was done to carry out an arrangement on behalf of the city, which received an equivalent. The city was expressly excluded from any rights of wharfing on the property brought into its limits from the adjacent private estates, as well as from interfer-

ing anywhere with private riparian ownership.—*L. 1827, p. 580, §§ 22, 49.*

The present charter authorizes the city to erect, repair and regulate public wharves and docks at the ends of streets, and on the property of the corporation, and to fix a line beyond which private docks shall not extend; and to lease the wharves and wharfing privileges at the ends of streets on the Detroit River, on such terms as they shall think fit, for not more than three years, subject to a free passage for persons with their baggage. This legislation indicates a clear intent on the part of the legislature not to treat these terminal wharves as highways, even when they belong to the city, but to leave their regulation within the city control, as far as it could be done without impairing private rights. How far the city could originally have set up proprietary rights in these termini, as against other claimants, is not important; as long possession would cure any defects, if existing, and the dock referred to in the record is in the actual possession of the lessees of the city.— *Linthicum v. Ray, 9 Wal., 241.* But in no case could the respondent be any better off by disputing it; the title is proprietary in its nature, and not a public easement.—*City of Boston v. Lecraw, 17 How., 426.*

There is no instance in which the term "public wharf" has been used in our legislation to indicate any thing analogous to a dedication to any public use, like that of highways. Such a public right is unknown to the common law. Wharfage involves exclusive use, for longer or shorter periods, by each vessel, depending on the nature of its business, and the extent of its cargo. All that is meant in the charter by a public wharf is a wharf belonging to the city, and to be used like any other wharf property. The term is applied as well to wharves on city property away from streets, as to wharves at the end of streets. The city is not com-

pelled to make them, and they have never been chargeable, like pavements, to adjacent property. They are built for purposes of revenue, and have always been used on that theory, as the law expressly allows them to be used. They are not open to indiscriminate public use, like highways.

The only question which is important, therefore, must arise upon the ordinance, and the proceedings under it.

The complaint is, that the respondent occupied with his steamer, the dock of the city lessees, against their will, and without their consent, and willfully refused to remove when the harbor master, at the complaint of the dock owners, directed such removal.

And this presents the question, whether a refusal to obey the orders of the harbor master to remove from the unauthorized occupation of a private dock, is alone sufficient to justify the conviction.

The authority of the harbor master is derived from the statute of 1871, concerning the metropolitan police, by which the harbor master under the city, was to be superseded by one appointed by the police board, who are state, and not city officers. The statute declares, that "the person so designated shall have the exclusive power to perform said duties in said city, under the ordinances which may from time to time be prescribed by the common council."

The office was originally created by ordinance, and not by law; and the authority to create it was derived from the power of the city "to preserve and regulate the navigation of the said river, within the limits of said city."

The harbor master is, like the other police officers, a merely ministerial officer, not appointed by the city, and he is confined to the exercise of such duties as may be imposed by valid ordinances, for the purpose of "preserving and regulating the navigation of the said river."

The regulations of navigation which he is to enforce,

must be such as are valid and binding on all persons. Neither the city nor the legislature could make the rights of navigators dependent on the private will of any one. They have a right to know their duties and responsibilities, and cannot be punished except when they violate some public statute or valid ordinance. The duty which may be imposed on such an officer must be, to enforce these ordinances, by warning or removing vessels that disobey them; but unless they are in fact violating their duty, he can have no right to interfere.

Unquestionably any ordinances concerning the regulation of navigation, may require to be flexible, and to call for some discretion in their enforcement. But there is no difficulty in this, any more than in the common-law and statutory regulations upon ways. Whether certain things obstruct the use of a highway, is to be determined by circumstances; but, when the circumstances are known, the conclusion is not difficult. Whether a vessel is in such a position as to be an obstacle to the convenient navigation of the river, at a given time and under existing circumstances, is as easy to decide as whether a nuisance or hindrance exists on land. But it has always been held that declaring a thing to be a nuisance does not make it so, if not so in fact; and an officer, removing as a nuisance that which is innocent, cannot be justified. Private rights cannot be invaded in that way. The city may undoubtedly use any reasonable discretion in establishing both specific and general rules of navigation, and may authorize the harbor master to warn or remove offending vessels. He must justify his action by the facts, if he interferes forcibly; and those who disobey his orders must be punished for disobeying them, because they were lawful, and not merely because he gave them. This necessity exists in all cases of official action without process. He must, doubtless, have a very large

reasonable discretion in directing the course of vessels, in such emergencies as require interference to prevent confusion, just as a police officer in a crowded thoroughfare may sometimes interfere to prevent a blockade of vehicles, or the stoppage of passage by a disorderly crowd. There is no objection to such a discretion in the one case, any more than in the other, to be exercised on his responsibility, upon the facts as they appear, and under circumstances requiring it. But it must be a discretion under legal principles, and not independent of them, to prevent the obstruction of lawful navigation.

The ordinance in question, to be valid, must be construed as giving him this discretion only where his interference is required to prevent obstructions and difficulties in the conduct of navigation. It would not be competent to allow him to establish general rules, or to permit his personal interference, except where occasion required it. And persons prosecuted for disobeying his orders cannot be held to answer, unless upon charges showing a state of things authorizing his interference, and making such disobedience wrongful.

It is not within the legitimate range of harbor regulations, to interfere with vessels merely because they occupy a private wharf without leave, when, if they had leave, they would not in fact hinder navigation, or interfere with the lawful movements of other vessels. The city has no more right to assume protection of private wharves, than of private lots, from encroachment. If a vessel wrongfully at such a wharf, prevents another from rightfully occupying, or approaching it, ordinances may, perhaps, reach such conduct, as impeding the rights of navigation. Upon this, as an abstract proposition, we express no opinion, as the case does not require it. But such interference cannot be had in the mere interest of the ownership of the wharf, where the occupancy is no obstruction to other vessels at the time.

Private property must usually seek protection against tres-
passes, from the general laws of the land, and the public
tribunals, and not from city by-laws.    Their purpose is,
properly, to prevent disorder and inconvenience, so far as
they apply to misconduct.

The charge in this case was, that the accused disobeyed
an order of the harbor master to leave a private wharf, not
on any ground of disorderly and obstructive conduct, but
merely because the wharfinger did not want him there.    We
think this is not an offense which the city can punish, and
that the conviction under it was unwarranted.

The conviction must be quashed, with costs.

The other Justices concurred.

*L. T. Griffin*, for plaintiff in *certiorari*, moved for costs
against the city.

*D. C. Holbrook, City Counselor, contra*.

THE COURT held that, although the People were the
nominal party, yet the prosecution was in the interest, and
on behalf, of the city, which is the real party prosecuting,
and costs were awarded against the city.    Execution was
ordered accordingly.