Louis McMurray *vs.* The Mayor and City Council of Baltimore and Benjamin Glenn.

*Dedication of a Street as a public Highway—Right of a Municipal Corporation to construct Wharves at the ends of Dedicated streets running to the water.*

McM. was the owner of a lot of ground in the City of Baltimore, binding on the south side of Cross street, and extending eastwardly to the water of the basin or harbor. On the 24th day of April, 1878, a resolution of the Mayor, &c., of Balt. was passed and approved, appropriating a sum of money for the purpose of constructing a public pier or wharf at the end or foot of Cross street, along the south side thereof of the width of twenty-two feet, extending to the Port Warden's line; and a contract for the construction of the wharf was made with G. There is no evidence of any proceedings for the condemnation of Cross street, but the street, as it now exists, extending to the water, was laid down on the earliest maps of the city, was dedicated by the owners of the land many years ago to public use, as a public highway or street, was accepted as such by the city authorities, and has been open and used by the public as such highway for a period beyond the memory of any living person. For at least thirty-five years, the municipal corporation has exercised undisputed control over the street, and appropriated and expended at various times, sums necessary for its repair and improvement. In the deed under which McM. claimed title, the existence of Cross street was recognized as one of the boundaries of his lot. On a bill filed by McM. against the Mayor, &c., of Balto., and G. for an injunction to restrain the construction of said wharf, it was HELD:

1st. That the facts above enumerated were sufficient to show a complete and perfect dedication of the street as a public highway, and the acceptance thereof by the corporation.

2nd. That the right of the city to construct wharves at the end of public streets extending to the water, and to charge wharfage for the use thereof, is not affected by the fact whether the street has been regularly opened and condemned as a highway, or

whether its use as such has been acquired by dedication. In each case the rights of the city and the public are the same.

3rd. That the dedication of Cross street to the public use as a street extending to the water, carried with it by necessary implication the right of the city to extend it into the harbor by the construction of a wharf at the end thereof, as proposed by the Resolution of April 24th, 1878.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*George T. Beall, Jr.* and *Charles Marshall*, for the appellant.

*James L. McLane, City Counsellor*, and *S. Teackle Wallis*, for the appellees.

BARTOL, C. J. delivered the opinion of the Court.

The appellant is owner in fee, of a lot of ground in the City of Baltimore, abutting on the south side of Cross street, and extending eastwardly to the water of the basin or harbor. His title was acquired on the 26th day of March 1873.

On the 24th day of April 1878, a Resolution of the Mayor and City Council of Baltimore was passed and approved, appropriating a sum of money for the purpose of constructing a public pier or wharf at the end or foot of Cross street, along the south side thereof, of the width of twenty-two feet, extending to the Port Warden's line. A contract for the construction of the wharf was made with Glenn, the appellee. Whereupon a bill was filed by the appellant, praying a writ of injunction to restrain

and prohibit the appellee from constructing the proposed wharf. The injunction was issued as prayed, and a motion being made to dissolve the same, the cause was heard below on this motion, upon bill, amended bill, answers and proof; and the present appeal is from an order dissolving the injunction, and dismissing the bill of complaint.

The bill alleges as ground of relief substantially as follows:

1st. That the complainant is owner in fee of the lot of ground described, binding on the south side of Cross street and extending to the Port Warden's line, together with the improvements thereupon erected, with the rights, alleys, ways, streets, waters, wharves, wharfages, privileges and appurtenances thereto belonging.

2nd. That his property is improved and of great value as a place of business, and the front thereof on Cross street is of greatest value to him in the conduct and management of his business, which is that of canning oysters, fruits and vegetables.

3rd. That Cross street has never been condemned and opened as a public highway by the Mayor and City Council of Baltimore, nor has title thereto been acquired in any other way by the Mayor and City Council of Baltimore; but the right of way of the public over said street, has grown out of a partial dedication by former owners of a portion thereof, and by long use as a road or way as to other portion thereof, and that the Mayor and City Council of Baltimore have no authority to obstruct said street in any manner, or to do any act or thing which will interfere with the rights of the complainant as the owner of the property fronting and abutting on said street.

4th. That the rights of the complainant as owner of the lot and improvements abutting on Cross street. extend to the Port Warden's line, and that the Mayor and City

Council of Baltimore have no authority over, or title to that portion of Cross street now covered with water, between the present *terminus* of the improved portion of the street and the Port Warden's line; and that the complainant has the same rights in and over the same, as in, over and to any other part of Cross street upon which his property abuts. That the Mayor and City Council of Baltimore have no right or authority to obstruct, or occupy the same or any part thereof with a wharf or pier; and that the proposed wharf would greatly damage his property and rights, injure, obstruct and destroy his trade and business, and entail upon him great and irreparable loss, and interfere with the free use of his property, and greatly diminish its value.

It appears by the record, that in 1873 or 1874, the complainant caused to be constructed from the water front of his lot, on the side contiguous to the south line of Cross street, a solid wharf or pier extending to within a few feet of the Port Warden's line, and erected thereon a building where his business is now carried on; that the said wharf was constructed without first laying before the Mayor and City Council of Baltimore a plan of the same, and obtaining their consent thereto, as required by the *Code of Public Local Laws, Art.* 4, *sec.* 267; and it further appears that the wharf of the complainant is a solid structure, not built upon "*piles*, so as to allow the free flow of water underneath the same," as required by *Ordinance No.* 45, *sec.* 6, of June 17th 1852. And this violation by the complainant of the provisions of the Code, and of the Ordinance above cited, is relied on in the answer as a ground for denying him equitable relief, even though he might otherwise be entitled to maintain the suit. In answer to this objection, the complainant avers in his amended bill, "that the improvements on his property were erected as they now are, more than four years ago, and have since been in the continuous use and

occupation of himself and his co-tenants, before he acquired the same in severalty, without let or hindrance from the Mayor and City Council of Baltimore, and without objection, although the said improvements were well known to some of the officers of the city, including the Harbor Master."

We shall not stop to consider the effect upon the rights of the complainant of his alleged violation of the Code, and the Ordinance; nor the effect of the alleged acquiescence therein of the city officials. But shall proceed to consider the main ground of defence relied on in the answer, as presenting the most material and important question; which is the right and authority of the City to construct the proposed wharf, as provided for by the *Resolution of April 24th* 1878. And first what is the legal *status* or condition of Cross street, and the right of the Mayor and City Council, and of the public thereto?

There is no evidence of any proceedings for condemnation of Cross street; but it clearly appears by the record, that the street as it now exists, extending to the water, was laid down on the earliest maps of the city, that it was dedicated by the owners of the land many years ago to public use as a public highway or street, that it was accepted as such by the city authorities, and has been open and used by the public as such highway for a period beyond the memory of any living person.

For at least thirty-five years the municipal corporation has exercised undisputed control over the street, and appropriated and expended at various times, sums necessary for its repair and improvement.

By *Resolution* approved *April* 10th 1844, $100 was appropriated to make Cross street passable from West street to the basin. By *Resolution* approved *May* 21st 1866, $3000 was appropriated to construct a wharf at the foot of the street, and the wharf was constructed. By *Resolution* of *October* 29th 1872, an appropriation was made

to repair all that part of Cross street between Covington street and the water. By *Ordinance No. 4 of* 1877, Cross street was paved, and the property of the complainant was assessed to pay a part of the cost of paving. Under *Resolution No.* 219, approved October 2nd 1877, the basin at the foot of Cross street, was dredged at the expense of the city, "to sufficient depth to subserve the interest and conveniences of navigation."

In the deed under which the complainant claims title, the existence of Cross street is recognized as one of the boundaries of his lot. The facts we have enumerated are sufficient to show a complete and perfect dedication of the street as a public highway, and the acceptance thereof by the corporation. It must therefore be taken and considered as one of the public streets or highways of the city. What are the rights of the city with respect to its authority to construct a wharf at the end thereof as proposed by the *Resolution of April* 24 1878? The complainant contends as averred in his amended bill, that "by the dedication of Cross street as a public highway, the public has acquired therein only a right of way for the usual purposes of such a right, and that, subject to such right of way, the ownership of the bed of the street is vested in the owners of the soil, among whom the complainant is one, entitled to the property to the middle of the street in front of his property as now occupied by him. He further claims that the Mayor and City Council have no lawful power or authority to take exclusive possession of any part of said street, or to permit others to take such possession, or to charge any toll or impose any other charge for the use of any part of such street, or to erect any permanent structure thereon, without compensation to the owners of said property, including the complainant, and that the attempt of the Mayor and City Council so to do, is in contravention of his rights as owner of the street, subject to the right of way of the public over the same." And it is

McMurray *vs.* Mayor, &c. of Balto., and Glenn.

charged that the Mayor and City Council are about to attempt " to take such exclusive possession of said property, by the construction of the proposed wharf."

This presents the question of the right of the city to construct wharves at the end of public streets extending to the water, and to charge wharfage for the use thereof. It is clear that this right is not affected by the fact, whether the street has been regularly opened and condemned as a highway, or whether its use as such has been acquired by dedication. In each case the rights of the city and of the public are the same. And the question therefore is whether the construction of such wharf is inconsistent with the rights of the owners of the soil, or with the public use of the street as a highway.

By the provisions of the City Charter, now found in *Code P. L. L., Art.* 4, *sec.* 265, the Mayor and City Council were authorized " to pass such ordinances as they may deem proper respecting wharves and wharfage, and the keeping of wharves in repair," &c. Under these provisions the Mayor and City Council have from time to time passed ordinances respecting wharves at the ends or sides of the public streets. An ordinance approved on the 24th day of April 1797, " to preserve the navigation of the harbor, and to provide for the exercise of powers heretofore vested in the Port Wardens by Act of Assembly ; " by its 8th section regulates the rate of wharfage at public wharves. By a supplementary ordinance thereto, approved March 19th 1798 it was enacted that " all wharves made out into the basin or harbor in front of any street or part of a street, and which street was heretofore laid out in the plan of the town as extending to the water, are hereby declared to be public wharves, and subject to the wharfage imposed and laid by the ordinance to which this is a supplement."

A similar provision was contained in *Ordinance No.* 9, approved *May* 22*nd* 1838.

The right of the city to pass ordinances of this kind was recognized in *Dugan vs. The Mayor and City Council,* 5 *G. & J.*, 375, where Judge DORSEY speaking for the Court, after referring to the rights of private wharf owners, says, "It is otherwise with wharfage collected at wharves owned by the town or city, or at the ends or sides of the streets, lanes or alleys; all these are called public wharves; are common highways, free for the use of the public; but at which tolls were collected by the town, now city, officers."

After the exercise by the municipal government of the power of constructing wharves at the ends of the public streets, for so long a period of time without question or dispute, and the sanction of the Court of Appeals, it would seem strange if that power could now be successfully denied.

In a city situated on navigable water, nothing is of more importance than the privilege of constructing wharves or piers for the benefit and promotion of commerce. Accordingly, by the *Act of* 1745, *ch.* 9, *sec.* 10, confirmed by the *Act of* 1784, *ch.* 39, *sec.* 6, the owners of lots upon the water of the harbor of Baltimore, were authorized to extend or improve such lots out into the water, in the manner and to the limit prescribed by the city authorities. *Dugan vs. The Mayor and City Council,* 5 *G. & J.*, 367; *Wilson vs. Inloes,* 11 *G. & J.*, 351; *Casey vs. Inloes,* 1 *Gill*, 432; *B. & O. R. Road vs. Chase,* 43 *Md.*, 23; *Mayor, &c., of Balt. vs. St. Agnes Hospital,* 48 *Md.*, 419. It is of equal importance that such improvements should be made at the ends of streets extending to the water. Where the city is owner in fee of such streets the right of making such improvements belongs to it as owner or proprietor under the Act of 1845. But where such street has been condemned or dedicated to the public use as a highway, it is contended by the appellant, that the city has no authority to improve the same by the construction of a wharf or

pier; because the exercise of such a power is supposed to be inconsistent with the use of the same as a highway. In this view we do not concur.

In *Haight vs. Keokuk*, 4 *Iowa*, 199, it was decided that a piece of land dedicated to the use of the public as a street upon navigable water, may be used for the purposes of a wharf for the landing of passengers and the depositing of freight, without any infringement of the right of the owner in fee of the land. In disposing of that case the learned Judge says (page 214,) "One further thought presented by the petitioner should be noticed. It is that if this ground is dedicated to the public, it is as a street only, and that if his rights are subject to the public use, they are so subject to the use of it only as a street or highway, and not as a wharf, and that it is named and called a street and not a wharf. This is taking a very narrow and close view. The streets of a town are fairly subject to many purposes to which a highway in the country would not be. More regard should be paid to the object and purpose than to the name. The ways of a town would be of comparatively little use, if the citizens and traders could not deposit their goods in them temporarily, in their transit to the storehouse; and so of other things, and so it is of the wharf. If goods cannot be deposited upon it in preparation for shipping them, or unladen upon it from boats and vessels, why is a town located near the river upon land which, in other respects is inconvenient and is expensive to grade to bring into form and order, and to keep in repair, instead of upon an even prairie requiring no such trouble and outlay." * * * * "The name street is sufficiently accurate, and sufficiently opens it to all the public uses manifestly intended."

This ruling was affirmed by the Supreme Court in *Barney vs. Keokuk*, 94 *U. S.*, 324, where the passage above quoted is cited with approval. Similar decisions were made by the Court of Appeals of Kentucky in *Rowans'*

*Ex'rs vs. Town of Portland,* 8 *B. Monroe,* 253, 254, 255, 256, and *Newport vs. Taylor's Ex'rs,* 16 *B. Monroe,* 700.

In 8 *B. Monroe,* 255, 256, the cases in 1 *Yeates,* 167; 9 *Serg. & R.,* 26; 3 *Watts,* 219, and 20 *Wend,* 133, cited in argument by the appellant, are referred to and distinguished from the case at bar. We have examined them, and are of opinion they are clearly distinguished from the present case. In our judgment the dedication of Cross street to the public use as a street extending to the water, carried with it by necessary implication, the right of the city to extend it into the harbor by the construction of a wharf at the end thereof. In *Barney vs. Mayor, &c., of Balt.,* 1 *Hughes Cir. Ct. R.,* 118, decided in 1863 it was held that "where an owner of land exhibits a map of it, in which a street is defined, though not yet opened, and sells building lots with front or rear on the street, and makes no express reservation, he dedicates the street for public use, and if in a city, surrenders it for all public purposes, and if the street runs to or binds on a river or bay, surrenders it for use as a wharf where vessels may load or unload, but yet the fee simple will not pass to the city."

We entertain no doubt of the right of the city to construct the wharf proposed by the *Resolution of April* 24*th* 1878, and affirm the decree of the Circuit Court.

*Decree affirmed.*

(Decided 29th June, 1880.)