JAMES SCOTT AND ALICE SCOTT v. RICHARD LAYNG AND CITY OF DETROIT.

*Injunction to abate nuisance—Excuse for its violation—Wharf and river slip at foot of city street—Rights of riparian owners.*

1. A failure to obey an injunction ordering the removal of a boat-house erected on a spile foundation in the Detroit river, adjoining a wharf built by the city of Detroit, at the foot of a street, on account of the severity of the weather and the ill-health and poverty of the party charged with the contempt, it appearing that when called upon to answer interrogatories he had removed the boat-house and was cutting out the spile supports, is sufficiently excused.

2. The construction and mooring near said wharf of a *floating* boat-house, to take the place of the one thus removed, was not a violation of the injunction.

3. The ownership by complainants of a water lot abutting on said street, gave them no rights in or control of the wharf at foot of said street, and while said floating boat-house might be a hindrance to navigation, it did not infringe upon complainants' rights as alleged in their bill or shown in their proofs.

Appeal from Superior Court of Detroit. (Chipman, J.) Argued Nov. 6, 1885. Decided January 13, 1886. Decree punishing defendant for contempt—reversed.

The "Joseph Campau farm," so called, was platted in 1866, upon which plat "Joseph Campau avenue" was laid out, running from the rear of said farm to the Detroit river. Upon said designated avenue appeared these words, viz.: "seventy feet wide, extending to channel bank." Said avenue was opened, accepted and worked by the city of Detroit to the river, and at its foot a dock or wharf, about eighteen feet wide, extending into the water over one hundred feet, was erected in such a manner as to leave a river slip or opening on each side of said wharf and the east and west lines of said avenue, if it extends to channel bank, several hundred feet from the water's edge, as claimed by complainants. In February, 1881, the city of Detroit leased to the defendant Layng these slips or openings "for boating

purposes," and he erected in one of them, upon spiles, a boat-house for storing small pleasure boats which he rented to the public.

In May, 1884, complainants filed a bill in the Detroit superior court charging the aforesaid facts, and further stating that "they were owners of a water lot on said plat, situate on the east side of said avenue and, like said avenue, extending to the channel bank of the Detroit river. That complainants were entitled to the use of said street, adjacent to said lot, for the purposes of reaching their said property, and in common with the general public had a right to have said avenue kept open and unobstructed for use as a common and public highway. That said boat-house deprived said lot of a part of the street frontage belonging to it, and lowered its rental value $100 per year. The bill prayed that the boat-house be declared a nuisance ; that defendants be required to remove the same and perpetually enjoined from maintaining any building on said public highway or in any way interfering with its use by the public or complainants. The defendants answered, admitting most of the material facts stated in the bill, but denying that " Campau avenue " was a public highway beyond the water edge to the channel bank of Detroit river, and averring that the wharf at the foot of said avenue belonged to said city and was at all times free and open to the public, including said complainants. On Nov. 7, 1884, the court (Chipman, J.) filed an opinion holding that the avenue extended to the channel bank and belonged to the public. A decree was made accordingly, requiring defendants, within sixty days from its entry, to remove said boat-house and enjoining them from erecting any buildings or other obstructions in said highway in front of or adjacent to the property of complainants. On Feb. 6, 1885, defendant Layng was ordered to show cause why he should not be punished for contempt in not complying with said decree. On Feb. 9, 1885, Layng presented his affidavit disclaiming any intention to disobey the injunction, and averring the removal of all his boats, apparatus, tackle and other property from the boat-house about a month prior to

making said affidavit; "that the weather then became and has continued intensely cold, making it almost impossible to work upon the removal of said building; that deponent has not been well most of the time or able to do said work of removal in person; that he is a poor man without regular occupation or income in the winter, and has not been and is not now in condition to hire and pay men for removing said boat-house and supports; that said building did not then interfere with the use of said avenue, the river being frozen over, and that it was his intention to take down and remove said building, and asking permission to defer said work until the weather moderates." The matter was held in abeyance by mutual consent until April 27, 1885, when interrogatories were filed by complainants which were answered by defendant Layng, in which he reiterated his reasons for not removing the boat-house and supports within the sixty days limited in the decree, stated that he had removed the building and was cutting out the spile supports, which could not be done sooner on account of ice and boom-logs and because he could not get a spile driver to pull them out. Admitting that a *floating* boat-house had been constructed and placed in the river slip which he expected to pay for and control; that said boat-house was so anchored or tied up next to the dock at the foot of said avenue as to leave a clear and unobstructed passage-way, ten feet wide, between said land and boat-house. Upon this showing Judge Chipman decreed "that Layng had been and was guilty of contempt, in that he did not remove his said boat-house and obstructions from the foot of Joseph Campau avenue, adjacent to property of complainants, either within the time or in the manner he was required and directed to do by the decree in this cause. That instead of wholly removing said boat-house and obstructions, he has rebuilt said boat-house in the form of a floating boat-house and keeps the same, and claims the right to keep the same moored to the wharf extending into the river and on the east side of the wharf, and between the dock and the wharf line and the edge of the river. That defendant Layng had been guilty of a violation of the decree in the cause, and of the

rights of complainants thereunder, and ordering him to pay a fine of fifty dollars, and remove his boat-house from the foot of said avenue, and in default that he be imprisoned in the Wayne county jail until said fine is paid, and boat-house removed, not exceeding six months." From this decree Layng appealed.

*F. A. Baker*, for complainant:

The decree expressly determines and declares that Joseph Campau avenue is a public highway to the channel bank or middle line of the Detroit river, on the authority of *Backus v. Detroit*, 49 Mich. 110.

The foot of the street being a highway by virtue of the statutory dedication, the city has no authority to obstruct it or to authorize any one to do so, citing same case.

The lease to defendant Layng from the city does not warrant him in keeping a *floating* boat-house at the foot of the street.

The only power the city has is conferred by the last clause of Sec. 115, marginal, of the charter of 1883, viz.:

" The common council may also lease the wharfs and wharfing privileges at the ends of streets on the Detroit river in said city, upon such terms and conditions, under such covenants, and with such remedies in case of non-performance as the common council may direct, but no buildings shall be erected thereon. No lease thereof shall be executed for a longer period than three years: *Provided*, that a free passage at all times for all persons with their baggage over said public wharfs shall be reserved."

This clause only authorizes the city to lease the wharfs, or wharfing privileges—that is, the city can lease an existing wharf built or owned by it, or it can lease or grant the privilege of building a wharf.

In the case at bar, the wharf extending out into the river is not leased. The lease merely describes the " slips on each side of the dock," etc.

The most the lessee could do would be to build a wharf over the water so leased. He has no authority to build anything else, and if he builds a wharf " a free passage at all times for all persons with their baggage over said public wharf," is reserved to the city by the charter.

That the lessee could occupy the foot of the street with a vessel, a floating building, or any other obstruction, under a

lease executed by virtue of the provisions in question, would seem to be absurd.

The floating boat-house is not a vessel or boat, and is not used for navigation, and the question whether the lessee could moor a vessel or boat in the slip is not really involved.

That he could permanently occupy the slip with a vessel which he used as a boarding-house, store-house, or boat-house, would seem to be beyond anything contemplated by the charter.

The foots of our streets should be kept clear and unobstructed for the free use of the public, not by the private lessees of the city, and there is really nothing in the charter provisions indicating any contrary policy.

Rightly construed and understood, the charter confers on the lessee under a lease from the city very meager and unsatisfactory rights and privileges. It is not believed that the lessee could put the property to any useful purpose, outside of the use ordinarily made of a wharf.

*Henry M. Duffield* for defendants:

The entire removal of the permanent boat-house satisfied the purpose of the decree and the new floating one does not come within the scope of the decree nor the case made by the bill. Defendant's present use of the slip is entirely different from the one enjoined: *Magennis v. Parkhurst*, 4 N. J. Ch. 433.

The power of the city over wharves at the ends of streets is settled in *Horn v. People*, 28 Mich. 222, and the original decree was in direct conflict with this case. The charter authorizes the city to make such a lease, even though the floating boat-house would otherwise be deemed an obstruction or a nuisance: Dillon's Municipal Corp. § 657; and the authority of the Legislature to establish a turnpike gate in a city street was sustained in *Stormfeltz v. Turnpike Co.* 13 Pa. St. 555, which decision is practically approved in *City of Detroit v. Detroit & Howell Plank Road Co.* 43 Mich. 140.

MORSE, J. November 7, 1884, the complainants, in the Superior Court of the city of Detroit, were granted a decree to the effect that Joseph Campau avenue, in said city, is a common and public highway, and extending to the channel bank of the Detroit river; that said Alice M. Scott has a life-estate in, and said James Scott the title in fee, to a water lot situated on the east line of said avenue; that the

defendant Layng, under a lease of the slips at the foot of said avenue from the city, and with its approval and consent, had built and was maintaining a large frame building as a boat-house upon said Joseph Campau avenue, in front of and adjacent to said complainant's property; and that said building was an illegal obstruction of said highway, and that it worked injury to complainants. It was also ordered by said decree that defendants remove said building, and abate the nuisance within sixty days from the entering of the decree, and be perpetually enjoined from again erecting any buildings or other obstructions in said highway, in front of or adjacent to the property of said complainants.

As this decree was not appealed from, we cannot pass upon its correctness.

It appears from the record that the defendant Layng was subsequently brought before the court to answer for contempt in not obeying said decree. Layng made a showing that, intending to carry out said decree, in January, 1885, he removed all his boats, apparatus, tackle and other property from said building; that the weather then became so cold that it was almost impossible to work at the removal of said building; that he was not well enough himself to do the work, and too poor to hire and pay men to remove such building and its supports, and asked leave of the court to allow said building to remain until the weather moderated. This was February 9, 1885. On the twenty-fifth day of April, 1885, interrogatories addressed to said defendant Layng were filed, in said court; answers to the same were also filed, and afterwards a hearing was had upon such interrogatories and answers, and testimony taken in the matter. June 15, 1885, it was determined by the court that Layng was guilty of contempt in not removing said boat-house in the manner or within the time as he was directed by said decree, and that, instead of wholly removing said boat-house and obstructions, he had rebuilt said boat-house in the form of a floating boat-house, and kept the same moored to the wharf, extending into the river, and on the east side of said wharf, and between the dock and the

wharf line and the edge of the river; and that in so keeping said floating boat-house he was guilty of violating said decree, and the rights of complainant thereunder. He was ordered to pay a fine of $50, and to remove said boat-house within forty-eight hours, with the alternative of being imprisoned in the Wayne county jail, until said fine was paid and said boat-house removed, not exceeding six months. From this order the defendant Layng appeals.

The building first erected by Layng was not on land, but built upon piles in the water. At the time of this contempt sentence, this building had been removed, and a floating scow or boat-house constructed, twenty-four feet in width, fifty-eight feet in length, and about fourteen feet in height, drawing about four inches of water when empty, which boat-house was anchored or tied up next to the dock at the foot of said avenue, ten feet away from the line of complainant's premises. It appears to us that the defendant gave good reason for not removing said stationary building sooner, and the question, therefore, arises whether the mooring of this floating boat-house where it was is a violation of said decree, subjecting Layng to punishment as for contempt. It is a floating structure, not affixed to the realty, but capable of being moved to any point at pleasure. Does it come within the scope of the decree, or of the case made by the bill? We think not. Its presence there does not affect the realty any more than would the anchorage of a vessel at the same point.

It is difficult to conceive upon what ground the decree was founded in the first place. It undertakes to establish a highway to the channel bank of the river, and treat the water between the land and the channel bank as an upland highway. The record shows a wharf or dock at the end of this avenue; and the point or slip wherein the stationary building stood, and where the floating house is moored, is upon the side of this dock. It was plainly decided by this Court in the case of *Horn v. People*, 26 Mich. 221, that a wharf at the termination of a street in the city of Detroit was not a part of the public highway, and that the city had author-

ity to lease such wharf. If the city has dominion over the wharves at the extremity of streets and in the water, there is nothing to give adjacent land-owners any more rights in such wharves than their neighbors have, which are none at all. And if the city can lease the wharf, we see no reason why it cannot also lease the slips for the purposes enjoyed by Layng.

The proceeding, however, under which Layng must be punished, if at all, for the maintenance of this floating boat-house within the slip is for the alleged violation of the injunction contained in said decree. The complainants are not entitled to this remedy against him, unless some tangible wrong has been done them. To enforce this penalty there should be clear proof of damages. Neither the bill nor the proofs taken show that there are any improvements, or any dock, or erection of any kind, upon complainants' lot. By the mooring of this floating boat-house within this slip their water facilities are not injured in any way shown to us. The tying up of this movable structure to the dock, over which complainants have no control, and in which they have no rights, because of their ownership of this lot, cannot be presumed, without proof, to be a nuisance or an irreparable mischief to them. It does not interfere with any of complainants' rights as alleged in their bill. It is not an obstruction to the highway. It may be a hindrance to navigation, but it does not infringe upon any of complainants' rights as alleged in their pleadings or shown in the proofs. The conviction of defendant is reversed, and he must be discharged, with costs of both courts.

The other Justices concurred.

Motion for rehearing. Argued February 9, 1886. Denied February 10, 1886.

*F. A. Baker*, for motion.

*Henry M. Duffield*, contra.

PER CURIAM. We find nothing in the reasons presented for a rehearing to make us doubt the correctness of the decision already rendered, and a rehearing is denied.