# David P. Reighard, James S. Denlinger and William H. Denlinger v. Phillip S. Flinn, Appellant.

*Municipalities—Public landing—Lease—Acts of March 31, 1836, and April 6, 1867—Equity.*

Under the Act of March 31, 1836, P. L. 318, which provides that the space graded and lying between Duquesne Way in the city of Pittsburg "and low water-mark of the Allegheny river shall forever thereafter be occupied, used and employed as a public landing, and the said councils shall have full power to make such rules, regulations and by-laws regulating the use of such public landing as they may think proper," and under the Act of April 6, 1867, P. L. 846, which forbids the city of Pittsburg from leasing, or in any manner alienating "public squares, common grounds or river shore landings," the city of Pittsburg has no right to lease to a private individual any part of the public landing between Duquesne Way and the Alleghney river; and citizens and taxpayers who own property abutting upon Duquesne Way have a standing in equity to prevent the execution of such lease.

Argued Oct. 31, 1898.     Appeal, No. 33, Oct. T., 1898, by defendant, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1897, No. 240, on bill in equity.   Before GREEN, WILLIAMS, McCollum, Mitchell, Dean and Fell, JJ.    Affirmed.

Bill in equity for an injunction.

STOWE, P. J., found the facts to be as follows :

Without entering into a minute detail of the minor facts of this case, it will be sufficient to say that the plaintiffs are the owners of certain pieces of property fronting for a considerable distance on Duquesne Way, in the city of Pittsburg ; that said lots were composed of parts of lots in the general plan of Pittsburg, made by the proprietors who owned the land running to the river, in fee simple, and are described in said plan by memoranda as being sixty feet in width and extending from Penn street, as shown on said plan, to the Allegheny river.   Subsequently, the proprietors by certain deeds granted and conveyed said lots to various persons in fee, describing them as extending to the Allegheny river, substantially as stated in the first, second and third paragraphs of plaintiffs' bill.   In pursuance of two acts of assembly, approved March 31, 1836, and June 3, 1836, the said Duquesne Way was laid out as a public street, forty feet wide, from Water street, on the Monongahela river, to a point beyond plaintiffs' properties, and the ground between said way and low water-mark of the Allegheny river was taken and appropriated for public use as a public landing.   The said acts declaring that the same should forever thereafter be occupied and employed as a public landing, and from that time till the commission of the acts complained of in plaintiffs' bill, the space in front of plaintiffs' said properties has continued to be open and unobstructed and used as a public landing whenever occasion required ; plaintiffs have large buildings erected on said lots for business purposes.

The defendant has entered upon the ground in front of plaintiffs' properties thus appropriated for a public landing, and has appropriated the same to his own use, and has erected a large structure thereon, fronting at or near low water-mark on the Allegheny river, which interferes with the landing in front of plaintiffs' properties, as well as plaintiffs' free access thereto. Defendant claims that he has a just and legal right to erect and maintain the structures placed by him upon the portion of the wharf in question, and sets out in his answer, by way of justification therefor, that under an act of assembly of this state, approved March 31, 1836, and a certain ordinance of the city,

and agreement in writing made and entered into between him and the city in pursuance thereof, and, also, under the power and authority of the secretary of war of the United States, the right was vested in him to erect, maintain and use the said part of said landing and the structures erected thereon in the manner and for the purpose intended by him, to wit: " to use the said place for the purpose of a public landing, and for no other purpose whatever, and, in order to accomplish such purpose, to build, as an improvement to such public landing, that which is necessary to enable said portion of said wharf or public landing to be used as a public landing—a roadway from the northern line of Duquesne Way to low water line; said roadway to be lower than the grade of Duquesne Way, and supported by piles, driven according to the plans and under the direction of and to the satisfaction and approval of the director of the department of public works and the United States engineer in charge, and in such manner that all driveways reaching to and returning from said tract of ground shall be continually kept open during the term mentioned in said lease, and in such manner as not to interfere with driving, hauling or passing over and along the surface of said Allegheny wharf, either now or in the future, when said wharf is graded and paved so that hauling can be accomplished thereon, and the said roadway (he avers) will, in fact, not constitute any obstruction to travel along and over said wharf more than the abutments of the different bridges." Defendant also avers that said landing has never been graded or fitted for a public landing, has never been used for a public landing or wharf, and could not be used for the purpose of hauling, and he proposes to improve and put in proper shape and condition for a public landing said portion of said wharf.

The court entered the following decree:

And now, to wit: November 29, 1897, the above entitled case having been heard on bill, answer and replication and agreed statement of facts, and having been argued by counsel for plaintiffs and defendant, it is now ordered, adjudged and decreed as follows:

1. The ordinance of the city of Pittsburg, approved January 27, 1897, purporting to authorize the lease of the premises described in plaintiffs' bill, is illegal, null and void.

2. The lease dated March 22, 1897, purporting to be made

under and in pursuance of said ordinance, and being the same under which defendant claims to use and occupy the premises described in the bill, is of no legal effect and confers no authority on him so to do.

3. The buildings and structures of every kind placed upon the premises by the defendant, as described in the bill and answer in this case, have been placed there without authority of law, and are a public nuisance, and should be removed by the defendant at his own cost.

4. The said defendant be and is hereby ordered, adjudged and decreed to remove said nuisance within thirty days, and be, and is hereby, enjoined from keeping or maintaining the said buildings and structures or any of them, or any part of them, on the said premises, after the expiration of said period, and from entering upon, using and occupying said premises under said ordinance and lease.

And it is further ordered, adjudged and decreed that the defendant pay the costs of this proceeding.

*Error assigned* among others was the decree of the court.

*Johns McCleave*, with him *Clarence Burleigh* and *D. T. Watson*, for appellant.—The plaintiffs have shown no title or right to have or maintain their bill to enjoin the public nuisance complained of: Allegheny City v. Moorehead, 80 Pa. 118; Birmingham v. Anderson, 48 Pa. 253; The Schools v. Risley, 10 Wall. 91; Banks v. Ogden, 2 Wall. 58; Brisbine v. St. P. & Sioux City Ry., 23 Minn. 114; People v. Colgate, 67 N. Y. 512; Codman v. Winslow, 10 Mass. 146; Rowan's Executors v. Portland, 8 B. Munroe, 232; Allen v. Munn, 55 Ill. 486; Potomac Steamboat Co. v. Upper Potomac Steamboat Co., 109 U. S. 672; Jones v. Johnston, 18 How. 150; Johnston v. Jones, 1 Black, 209; Bates v. Illinois C. R. Co., 1 Black, 204; Hoboken L. & I. Co. v. Hoboken, 7 Vroom, 541; Lyon v. Fishmongers' Co., Law Reps. 1 App. Cas. 662.

If the structure is authorized it is, therefore, a public nuisance, and the right of redress is with the public, and not with the plaintiffs unless they have shown some special injury, peculiar to themselves, and different in kind from that suffered by the general public: Illinois & St. L. Railroad & Canal Co.

v. City of St. Louis, 2 Dillon, 70; Attorney General v. Conservators of the Thames, 1 H. & M. 1; Blood v. Nashua & Lowell R. R., 2 Gray, 137; Brightman v. Fairhaven, 7 Gray, 271; Fall River Iron Works v. Old Colony, etc., R. R., 5 Allen, 221; Magee v. London & Port Stanley Ry. Co., 6 Grant's Ch. 170; Hamilton v. N. Y. & H. R. R., 9 Paige, 171; Dwenger v. C. & G. T. Ry., 98 Ind. 153; Gould on the Law of Waters, sec. 124; Zabriskie v. Jersey City, etc., R. R., 13 N. J. Eq. 314; Richards's App., 57 Pa. 113; Bunnell's App., 69 Pa. 59; Sparhawk v. Union Pass. Ry., 54 Pa. 401; Cumberland Valley Railroad's Appeal, 62 Pa. 218; Georgetown v. Alexandria Canal Co., 12 Pet. 91; Northern Pacific R. R. v. Whalen, 149 U. S. 162; Buck Mt. Coal Co. v. L. C. & N. Co., 50 Pa. 91; Cox's App., 11 W. N. C. 571; Black v. Phila. & R. R. R. Co., 58 Pa. 249; Higbee v. R. R. Co., 19 N. J. Eq. 276; Gold v. Philadelphia, 115 Pa. 184; Hobson v. Philadelphia, 155 Pa. 131.

If it could be held upon this record that the plaintiffs have shown a right to maintain the bill, yet the injunction should be refused because the structure erected by defendant is not a nuisance, but is a lawful and appropriate use of the public landing within the purposes and uses for which it was dedicated: Dutton v. Strong, 1 Black, 32; Barney v. Keokuk, 94 U. S. 324; Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 101 Mo. 192; Geiger v. Filor, 8 Fla. 325; Farnum v. Johnson, 62 Wis. 624; Application of the Mayor of New York, 135 N. Y. 253.

*George W. Guthrie*, for appellees.—The ordinance and lease under which appellant claims are illegal and void: Stockton v. R. R., 32 Fed. Rep. 9; R. R. Co. v. Illinois, 146 U. S. 387.

The lease and ordinance being null and void appellant's possession and the structure erected by him, having no other authority, are also illegal: Barney v. Keokuk, 94 U. S. 324; Mayor, etc., of N. Y., 135 N. Y. 253; In re Eureka Basin, 96 N. Y. 42; Lord v. City of Oconto, 47 Wis. 386; Gale v. Kalamazoo, 23 Mich. 344.

Appellees had a right to maintain the bill as property owners: Yates v. Milwaukee, 10 Wall. 497; Gould on Water, sec. 48, Lance's App., 55 Pa. 16; Miller v. Lynch, 149 Pa. 460; Fereday v. Mankedick, 172 Pa. 535; Clad v. Paist, 181 Pa. 148; Penna. R. R. Co.'s App., 115 Pa. 514; Groff's App., 128 Pa.

621; R. R. v. Reading Paper Mills, 149 Pa. 18; Westhaeffer v. Ry. Co., 163 Pa. 54; Potts v. Quaker City Elevated R. R., 161 Pa. 396; McDonald v. Newark, 42 N. J. Eq. 136; Callanan v. Gilman, 107 N. Y. 360; Flynn v. Taylor, 127 N. Y. 596.

OPINION BY MR. JUSTICE GREEN, January 3, 1899:

The authority of the city to make the lease in question to the defendant is derived from the third section of the Act of March 31, 1836, P. L. 318. By that act the councils of the city of Pittsburg were authorized to define, locate and cause to be opened a public street to be known as Duquesne Way, of at least forty feet in width and at least 420 feet north of Penn street.

By the third section it was provided that after Duquesne Way was located and opened, the councils were authorized to grade and improve the space lying northwardly from the line of the way, "and the space so graded and lying between the said way and low water-mark of the Allegheny river, shall forever thereafter be occupied, used and employed as a public landing, and the said councils shall have full power to make such rules, regulations and by-laws regulating the use of such public landing as they may think proper, and shall not be inconsistent with the existing laws of this commonwealth . . . . and to exercise in every respect over the said public street and public landing, when the same shall be opened, the same powers and authority which they may or can exercise by law over the other public streets and landings within the said city." The answer of the defendant avers that in pursuance of the authority thus conferred an ordinance was passed by the councils on January 25, 1897, authorizing the department of public works to lease to the defendant for the term of five years the part of the public landing now in question. Other averments are made in the same connection which are not necessary to be considered. The contention turns upon the question whether the city councils had the lawful power to make a lease of such a piece of public property to a private person. The learned court below decided that they did not have such power, and therefore granted a restraining injunction against the defendant. The propriety of this ruling is the question before us.

The plaintiffs are citizens and taxpayers of the city and are

the owners of property fronting on Duquesne Way immediately opposite the proposed structure which the defendant is about to erect. The plaintiffs allege that they have held and owned their lots with buildings on them from a time before the lease to the defendant was made, and have always been accustomed to have a free and unobstructed passage to and over the public landing in front of their lots, and that the erection by the defendant of any buildings or structures on said leased premises will prevent their free access to and use of the public landing at that place, and will also deprive them of free access to the river, and of the free enjoyment of light and air over said space. We do not think there is any doubt of the right of the plaintiffs to maintain the present bill if they incur a liability to the injuries complained of, and we do not think it necessary to expend time in the discussion of that question. They are injuries which are personal to themselves, and they are direct and positive in character. As it seems to us the fate of the contention depends upon the question of the right of the defendant to occupy the public landing and to erect structures thereon as is averred in the bill and admitted in the answer. But that question depends exclusively upon the lawful right of the city to make such a lease and to authorize such structures. On this question it seems to us the weight of authority is against the defendant. Passing by the very important consideration that if the right now claimed for the city be sustained, the entire public landing system of the city on its river fronts would soon be destroyed and become vested in private persons for their own emolument, it is enough to know that in the fundamental grant to the city by the legislature of power over the landings, there is a most serious restriction upon any disposition of the control over the landings which will interfere with the free, perpetual, public and unrestrained use of them by the whole community. The specific and positive language of the act of 1836 is that " the space so graded and lying between said way and low water-mark of the Allegheny river shall forever thereafter be occupied, used and employed as a public landing." Now, if a system be inaugurated of leasing out to private persons portions of the space thus formally dedicated to a perpetual public use, we are unable to see how the public character of the landing is to be preserved as is required

by the act. Because it is of no consequence, as it seems to us, that the people generally may have the right to make use of the landing by purchasing the consent of the lessees with a price for such use; it is no longer the free, unrestrained use by all the people as of a public and undisputed right thereto. The privilege would be something that belongs to private persons who are lessees of the city, and in order to be enjoyed by the general public it must be purchased from those persons, and a private gain must therefore be subserved in order that a clear public and free right of enjoyment can be exercised.

The authorities which are directly pertinent seem to be conclusive on this subject. In Illinois Central R. R. Co. v. Illinois, 146 U. S. 453, Mr. Justice FIELD, delivering the opinion, said: " The trust devolving upon the state for the public, and which can only be discharged by the management and control of the property in which the public has an interest, cannot be relinquished by a transfer of the property. . . . The state can no more abdicate its trust over property in which the whole people are interested, like navigable rivers and soils under them, so as to leave them entirely under the use and control of private parties, than it can abdicate its police powers in the administration of government and the preservation of the peace." This ruling appears to be quite applicable to the present case, because the act of 1836, while it does confer the power to make rules and regulations concerning the space between the way and the river, does not confer any power upon the city to divest itself of its authority or control over the space which it designates as " public landing." Rules and regulations concerning the use of the whole of this space called public landing are radically different from an absolute conveyance of the right of use, whether by lease or deed. The intention of the legislature, moreover, is made still more manifest upon this subject in the consolidation act of April 6, 1867, in which it is specially provided (sec. 35) that " All rights of property of every kind and description, excepting school houses and lots, which were vested in any of said former corporations or townships shall thereafter be deemed and held to be vested in the corporation created by this act. . . . Provided, that nothing hereinafter contained shall be construed to empower said corporation to sell, mortgage, lease or in any manner alienate, any

lands which were held by any of said former corporations as public squares, common grounds, or river shore landings, but such lands shall be held for general public use in the same manner as before the passage of this act." Besides being specially restrictive as to the classes of property described, this act is confirmatory of the policy established by the act of 1836, particularly enjoining that the new municipal corporation shall not sell, mortgage or lease, or in any manner alienate, any lands which were held by any of the former corporations as public squares, common grounds or river shore landings, "but such lands shall be held for general public use in the same manner as before the passage of this act." It is plainly manifest, therefore, that the contest here is not to be affected by decisions which are predicated of municipalities which do have the whole power of disposition of water fronts, wharves, docks and landings, such as on tide water and lake ports or ports of great cities on the large rivers of the country, but only of such where the municipal control is limited by specific restrictions within which alone the municipal authority must be exercised. Judged by this test the solution of the present controversy seems to be quite simple, and it appears to us that the learned court below arrived at the correct result in granting the injunction prayed for.

Decree affirmed and appeal dismissed at the cost of the appellant.